Andres Diaz, (A4309)
Timothy J. Larsen, (A10263)
Jonathan A. Diaz, (A12073)
DIAZ & LARSEN
307 West 200 South, Suite 2004
Salt Lake City, Utah 84101
Telephone (801) 596-1661
Fax (801) 359-6803
email: courtmail@adexpresslaw.com
*Attorneys for the Debtor in Possession*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In Re: DO1, INC.,<br>PO Box 27837<br>Salt Lake City, UT 84127<br><br>Debtor in Possession. | Bankruptcy No. 14-22440<br>Chapter 11<br><br>FILED ELECTRONICALLY<br><br>Judge R. Kimball Mosier |

DO1, INC.'S MOTION TO AUTHORIZE SALE AND/OR ASSIGNMENT OF PROPERTY
OF THE BANKRUPTCY ESTATE

The Debtor and Debtor in Possession, DO1, Inc. (the "Debtor"), by and through its attorneys of record, hereby moves this Court for an order authorizing the sale and/or assignment of the bankruptcy estate's interest in certain estate property mainly the business assets, including the Ground Lease by and between The Shelledy Family Trust and the Debtor and the Sublease by and between the Debtor and Transfuels, LLC that are situated in Salt Lake County, Utah (the "Property"), as more particularly described in the Commercial Real Estate Purchase Contract (the "Purchase Contract") from "Jake Abbott or Assigns"(sic) ("Abbott"), attached hereto and incorporated herein by reference as Exhibit "A". In support of this Motion, the Debtor respectfully represents as follows:

1

## JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper in this district pursuant to 28 U.S.C. §§1408 and 1409. The statutory predicate for the relief requested in the Motion is 11 U.S.C. §§ 363(b) and (f) and 365(f).

## BACKGROUND

2. On March 14, 2014 (the "Petition Date"), the Debtor commenced this reorganization case by filing a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

3. The Debtor is a corporation organized under the laws of the State of Utah and continues to operate its business and manage its affairs as a debtor in possession pursuant to 11 U.S.C. §§1107 and 1108.

4. The Debtor has been diligently marketing the Property and negotiating with various interested parties for several months. Those parties include various diesel and gasoline fuel operators that would most likely have an interest in the Property and the means to consummate a sale.

5. As a result of those efforts, the Debtor has received the Sale Contract from Clifford Strand or Assigns ("Strand"), one of the parties with which the Debtor has been negotiating, offering to purchase the Property owned by the Debtor for the sum of $1,500,000.00. This is an all cash offer, subject to higher and better offers. This offer was eventually withdrawn.

6. After receiving the Strand offer, the Debtor received an offer from Branden Hansen or Assigns ("Hansen"), another of the parties with which the Debtor has been

negotiating. That offer was also an all cash offer in the amount of $1,600,000.00. Although the Hansen offer was accepted by the Debtor and approved by the Court, Hansen never performed within the time frame authorized by the Court and eventually withdrew its offer.

7. After Hansen failed to perform, the Debtor once again focused its attention on obtaining other offers on the Property.

8. As a result of those efforts, the Debtor received an offer for a tax free exchange of a hotel/motel property in Hays, Kansas. The Debtor found that the parties with liens on the Property were not interested in the tax free exchange. Accordingly, the Debtor did not pursue that offer.

9. On or about December 3, 2014, the Debtor received another offer to purchase the Property for $700,000.00 from Brad Hall & Associates ("Hall"). Hall is a creditor of the estate with an unsecured claim that is disputed by the Debtor.

10. On or about December 14, 2014, the Debtor received the Purchase Contract from Abbott. This is an all cash offer in the amount of $1,200,000.00, subject to Abbott obtaining appropriate financing. Abbott is in the process of seeking approval of SBA financing through First National Bank of Layton.

11. This all cash offer by Abbott is a fair and equitable offer according to Debtor's assessment of appraisals of the property and the current market conditions.

12. The proposed sale is an arms length transaction with Abbott. Abbott, however, is represented by Stonebrook Real Estate and Jimmy Reese (collectively referred to as "Reese"), the same professionals hired by the Debtor to market and sell the Property. Neither the Debtor nor Reese have made any promises or agreements with Abbott to

entice Abbott to make this offer other than as disclosed in this Motion; and, Abbott has not agreed to do anything other than as disclosed in the offer. Furthermore, the Debtor has notified by first-class, postage prepaid additional parties who expressed past interest in purchase of the Property to be sold upon approval of this Motion.

13. Urgency in consummating the sale is not imposed artificially by Abbott. Abbott is anxious to consummate this sale because there are short time frames to initiate and complete the closing of the sale so that Abbott can take over and make any modifications needed to incorporate this business into Abbott's ongoing operations. The Debtor is also anxious to close the sale and assign the Lease and Sublease because of the difficulty in obtaining the necessary funds to keep the business operating and the need to cure the arrearages on the Lease.

14. The loss of this sale will have a negative impact on the Debtor's ability to reorganize and to return a substantial amount to creditors.

15. While a prompt and immediate sale of the assets will 1) maximize the value of the property; 2) generate enough revenue to satisfy a substantial portion of the claims of secured creditors, 3) allow the Debtor to cure outstanding lease arrearages, and 4) to preserve the estate for reorganization. Such circumstances support a finding of cause for approving the sale.

## SALE TERMS

16. The Debtor intends to sell and/or assign its interest in the Property, *free and clear of all liens and interests*, but "as is, where is", and with no warranties or guarantees.

17. All valid liens would attach to the cash proceeds of the sale in the same order and

priority that they currently exist.

18.    The Debtor has received a cash offer for the Property as set forth above, which offer is subject to higher and better offers and subject to bankruptcy court approval.

19.    Any parties desiring to make a higher and better offer must present the offer in writing prior to or at the hearing on this Motion.

20.    Upon completion of the sale, the Debtor and will provide the appropriate instruments necessary to transfer and/or assign the Property to the successful purchaser, which will be accompanied by the order approving the sale of the Property free and clear of liens and interests.

21.    The Debtor requests that the Court make a finding that the ultimate purchaser of that portion of the lien is a "good faith purchaser" and subject to the protections of 11 U.S.C.§363(m).  The Debtor believes that the sale is proposed in good faith and is for fair value.  Moreover, the sale is expressly subject to higher and better offers.

22.    As indicated above, the claims of the lien holders on the Property, as well as senior real property tax liens shall attach to the net sale proceeds in their same order and priority as they attached to the Property. The Debtor also seeks court approval to cure any lease arrearages from the net proceeds so that the Debtor can pass title to the Property to the purchaser free and clear of liens and interests.

23.    The balance of the net proceeds of the sale shall be distributed through a plan of reorganization or as otherwise ordered by the Court.

## ARGUMENT

### 11 U.S.C. § 363 ALLOWS THE DEBTOR TO SELL THE PROPERTY FREE AND CLEAR OF LIENS AND INTERESTS.

The Bankruptcy Code provides the debtor in possession, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate...." 11 U.S.C. § 363(b). The Bankruptcy Code also provides that a debtor in possession may sell property free and clear of any interests in the property if, among other things, the lien holders on the property consent to the sale or the price at which the property is to be sold is greater than the aggregate liens on the property. *See*, 11 U.S.C. § 363(f)(2)-(3). The Debtor anticipates that the lien holders will consent to the sale inasmuch as their claims will be substantially satisfied from the proceeds of the sale. Furthermore, a prompt and immediate sale of the assets will maximize the value of the property and preserve the estate for reorganization.

The Debtor believes that this offer is in the best interest of the Debtor, the bankruptcy estate and the creditors. Accordingly, the Debtor is entitled to sell the Property in accordance with 11 U.S.C. § 363.

### 11 U.S.C. § 365 ALLOWS THE DEBTOR TO ASSIGN THE LEASES THAT WERE PREVIOUSLY ASSUMED BY THE DEBTOR.

The Bankruptcy Code provides that the Debtor "may assign [an assumed lease]...." In this case, the Debtor previously assumed the Lease and Sublease. The Landlord has entered into negotiations with Abbott in order to extend the Lease to a thirty year term. Abbott has also provided the Landlord with adequate assurances of future performances under the Lease. Abbott is also able to provide adequate assurances of

future performance under the Sublease. Accordingly, the Debtor is entitled to assign the Lease and Sublease in accordance with 11 U.S.C. § 365.

## NOTICE

The Debtor submits that the procedures for notice to interested parties, creditors and potential purchasers, satisfy the requirements of the Bankruptcy Code

Pursuant to Fed. R. Bankr. P. 2002, 6004 and 9014, the Debtors will give notice of this proposed sale and/or assignment of the Property by providing a copy of this Motion and a Notice of Hearing to: 1) all parties in interest on the mailing matrix maintained in the case; 2) all lien holders that may assert a lien on the Property and their counsel (if known); 3) all parties that have requested notice in this case; 4) other parties that have previously expressed an interest in the Property; and, 5) the United States Trustee's Office.

Except as otherwise set forth herein, none of the types of disclosures required under L.B.R. 4001-2 are applicable to this Motion.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests the Court grant the Debtor's Motion and grant the Debtor such other and further relief as the Courts deems just and proper.

Dated: January 13, 2015

DIAZ & LARSEN

By /s/ Andres Diaz
Attorneys for the Debtor in Possession

# COMMERCIAL REAL ESTATE PURCHASE CONTRACT

This is a legally binding contract. It has been prepared by the Utah Association of REALTORS® for the use of its members only, in their transactions with clients and customers. Parties to this Commercial Real Estate Contract ("Contract") may agree, in writing, to alter or delete provisions of this Contract. Seek advice from your attorney or tax advisor before entering into a binding contract.

## EARNEST MONEY RECEIPT

On this <u>December 14, 2014</u> ("Offer Reference Date") <u>Jake Abbott or Assigned</u> ("Buyer") offers to purchase from <u>DO1 Inc</u> ("Seller") the *Property* described below and hereby delivers to the Brokerage or Title/Escrow Company, as *Earnest Money*, the amount of $<u>10,000.00</u> in the form of <u>check</u> which, upon Acceptance of this offer by all parties (as defined in Section 23), shall be deposited in accordance with state law.

Brokerage or Title/Escrow Company <u>Stonebrook Real Estate</u> Address <u>6375 S. Highland Dr.</u>

Received by: _____ on _____
(Signature above acknowledges receipt of Earnest Money)                     (Date)

## OFFER TO PURCHASE

**1. PROPERTY (General Description):** <u>DO1 Leasehold Assects (No Real Estate)</u>

Address <u>1881 West California Av</u>   City <u>Salt Lake City</u>

County <u>Salt Lake</u>   State of Utah, ZIP <u>84106</u>

County Tax I.D. # _____ (the *"Property"*)

For a legal description **(Check Applicable Box):** [X] SEE ADDENDUM # <u>1</u>   [ ] COMMITMENT FOR TITLE INSURANCE as provided in Section 7(b).

**1.1 INCLUDED ITEMS:** Unless excluded herein, this sale includes all fixtures presently attached to the *Property*. The following personal property shall also be included in this sale and conveyed under separate *Bill of Sale* with warranties as to title:
<u>All Leasehold Assects</u>
**1.2 Excluded Items.** These items are excluded from this sale:
<u>Remaning fuel and 7 11 inventory to be conveyed and paid for with bill of sale</u>

**2. PURCHASE PRICE** The Purchase Price for the *Property* is $<u>1,200,000.00</u>
The Purchase Price will be paid as follows:
$<u>10,000.00</u>   (a) *Earnest Money Deposit.*
$<u>1,080,000.00</u>  (b) **New Loan.** Buyer will apply for one or more of the following loans: [ ] **Conventional** [X] **SBA** [ ]
        **Other** (specify) _____ Buyer shall have the right to approve the terms and conditions of the new loan as provided in *Section 8 (f)*.
$_____  (c) **Loan Assumption Addendum** (see attached *Assumption Addendum* if applicable)
$_____  (d) **Seller Financing** (see attached *Seller Financing Addendum* if applicable)
$_____  (e) **Other** (specify) _____
$<u>110,000.00</u>  (f) **Balance of Purchase Price in Cash at Settlement**

$<u>1,200,000.00</u>  **PURCHASE PRICE. Total of lines (a) through (f)**

**3. SETTLEMENT AND CLOSING.** Settlement shall take place on the Settlement Deadline referenced in *Section 24(c)*, or on a date upon which Buyer and Seller agree in writing. "Settlement" shall occur only when **all** of the following have been completed: (a) Buyer and Seller have signed and delivered to each other or to the escrow/closing office all documents required by this Contract, by the lender, by written escrow instructions or by applicable law; (b) any monies required to be paid by Buyer under these documents (except for the proceeds of any new loan) have been delivered by Buyer to Seller or to the escrow/closing office in the form of collected or cleared funds; and (c) any monies required to be paid by Seller under these documents have been delivered by Seller to Buyer or to the escrow/closing office in the form of collected or cleared funds. Seller and Buyer shall each

Page 1 of 6      Buyer's Initials _____ Date 12-14-14 Seller's Initials _____ Date 12/14/14

pay one-half (½) of the fee charged by the escrow/closing office for its services in the settlement/closing process. Taxes and assessments for the current year, rents, and interest on assumed obligations shall be prorated at Settlement as set forth in this Section. Tenant deposits (including, but not limited to, security deposits and prepaid rents) shall be paid or credited by Seller to Buyer at Settlement. Prorations set forth in this Section shall be made as of the Settlement Deadline date referenced in *Section 24(c)*, unless otherwise agreed to in writing by the parties. Such writing could include the settlement statement. For purposes of this Contract, "Closing" means that: (i) Settlement has been completed; (ii) the proceeds of any new loan have been delivered by the lender to Seller or to the escrow/closing office; and (iii) the applicable Closing documents have been recorded in the office of the county recorder.

4. **POSSESSION.** Seller shall deliver physical possession to Buyer within: [ ] _____ HOURS AFTER CLOSING; [ ] _____ DAYS AFTER CLOSING; [X] OTHER (SPECIFY) 24 hours after funding _____
Any rental of the *Property* prior to or after Closing, between Buyer and Seller, shall be by separate written agreement.

5. **CONFIRMATION OF BROKERAGE FEES & AGENCY DISCLOSURE.** Buyer and Seller acknowledge prior receipt of written agency disclosure provided by their respective Buyer's Agent or Seller's Agent that has disclosed the agency relationships that are confirmed below. Buyer and Seller further acknowledge that Brokerage Fees due as a result of this transaction are being paid based upon the terms of a separate written agreement. At the signing of this Contract:

Seller's Agent, <u>Jimmy Reese/ B. Singh</u> represents [ ] Seller [ ] Buyer [X] both Buyer and Seller as a Limited Agent;

Seller's Brokerage, <u>Stonebrook Real Estate</u> represents [ ] Seller [ ] Buyer [X] both Buyer and Seller as a Limited Agent;

Buyer's Agent, <u>Jimmy Reese/ B. Singh</u> represents [ ] Seller [ ] Buyer [X] both Buyer and Seller as a Limited Agent;

Buyer's Brokerage, <u>Stonebrook Real Estate</u> represents [ ] Seller [ ] Buyer [X] both Buyer and Seller as a Limited Agent;

6. **TITLE TO PROPERTY & TITLE INSURANCE.**
   (a) Seller represents that Seller has fee simple title to the Property and will convey good and marketable title to Buyer at Closing by: [ ] **GENERAL WARRANTY DEED** [ ] **SPECIAL WARRANTY DEED**, free of financial encumbrances except as provided under *Section 10.1*.
   (b) At Settlement, Seller agrees to pay for a standard-coverage owner's policy of title insurance insuring Buyer in the amount of the Purchase Price. The title policy shall conform with Seller's obligations under *Section 10.1* and with the *Commitment for Title Insurance* as agreed to by Buyer under *Section 8*.
   (c) [ ] **BUYER ELECTS TO OBTAIN A FULL-COVERAGE EXTENDED ALTA POLICY OF TITLE INSURANCE.** The cost of this coverage (including the ALTA survey), above that of the standard-coverage Owner's policy, shall be paid for at Settlement by: [ ] **BUYER** [ ] **SELLER** [ ] **OTHER** _____.

7. **SELLER DISCLOSURES.** No later than the Seller Disclosure Deadline referenced in *Section 24(a)*, Seller shall provide to Buyer the following documents which are collectively referred to as the "Seller Disclosures":
   (a) a Seller property condition disclosure for the *Property*, signed and dated by Seller;
   (b) a *Commitment for Title Insurance* on the *Property*;
   (c) a copy of all leases and rental agreements now in effect with regard to the *Property* together with a current rent roll;
   (d) operating statements of the Property for its last <u>N/A</u> full fiscal years of operation plus the current fiscal year through _____ certified by the Seller or by an independent auditor;
   (e) copies in Seller's possession, if any, of any studies and/or reports which have previously been done on the *Property*, including without limitation, environmental reports, soils studies, site plans and surveys;
   (f) written notice of any claims and/or conditions known to Seller relating to environmental problems and building or zoning code violations; and
   (g) Other (specify) _____

8. **BUYER'S RIGHT TO CANCEL BASED ON BUYER'S DUE DILIGENCE.** Buyer's obligation to purchase under this Contract (check applicable boxes):
   (a) [X] **IS** [ ] **IS NOT** conditioned upon Buyer's approval of the content of all the *Seller Disclosures* referenced in *Section 7*;
   (b) [X] **IS** [ ] **IS NOT** conditioned upon Buyer's approval of a physical condition inspection of the *Property*;
   (c) [X] **IS** [ ] **IS NOT** conditioned upon Buyer's approval of a survey of the *Property* by a licensed surveyor ("Survey");

Page 2 of 6    Buyer's Initials _____ Date 12/14/14    Seller's Initials _____ Date 12/14/14

(d) [X] IS [ ] IS NOT conditioned upon Buyer's approval of applicable federal, state and local governmental laws, ordinances and regulations affecting the *Property*; and any applicable deed restrictions and/or CC&R's (covenants, conditions and restrictions) affecting the *Property*;
(e) [X] IS [ ] IS NOT conditioned upon the *Property* appraising for not less than the Purchase Price.
(f) [X] IS [ ] IS NOT conditioned upon Buyer's approval of the terms and conditions of any mortgage financing referenced in *Section 2*.
(g) [X] IS [ ] IS NOT conditioned upon Buyer's approval of the following tests and evaluations of the *Property*: (specify)
<u>All under ground must be approved and up to date</u>

If any of the items *8(a) through 8(g)* are checked in the affirmative, then *Sections 8.1, 8.2, 8.3 and 8.4* apply; otherwise, they do not apply. The items checked in the affirmative above are collectively referred to as "Buyer's Due Diligence." Unless otherwise provided in this Contract, the Buyer's Due Diligence shall be paid for by Buyer and shall be conducted by individuals or entities of Buyer's choice. Buyer shall conduct Buyer's Due Diligence in such manner as not to unreasonably disrupt the activities and business of Seller, and shall indemnify Seller and hold Seller harmless from and against any and all liability, claim, or damages which arise from, is caused by, or is in any manner connected with Buyer's Due Diligence, including without limitation, claims for payment for inspection services, claims for mechanics liens, and physical damage to the Property. Seller agrees to cooperate with Buyer's Due Diligence and with a site inspection under *Section 11*.

    **8.1 Due Diligence Deadline.** No later than the Due Diligence Deadline referenced in *Section 24(b)* Buyer shall: (a) complete all of Buyer's Due Diligence; and (b) determine if the results of the Buyer's Due Diligence are acceptable to Buyer.

    **8.2 Right to Cancel or Object.** If Buyer, in Buyer's sole discretion, determines that the results of the Buyer's Due Diligence are unacceptable, Buyer may, no later than the Due Diligence Deadline, either: (a) cancel this Contract by providing written notice to Seller, whereupon the Earnest Money Deposit shall be released to Buyer; or (b) provide Seller with written notice of objections.

    **8.3 Failure to Respond.** If by the expiration of the Due Diligence Deadline, Buyer does not: (a) cancel this Contract as provided in *Section 8.2*; or (b) deliver a written objection to Seller regarding the Buyer's Due Diligence, the results of the Buyer's Due Diligence shall be deemed approved by Buyer; and the contingencies referenced in *Sections 8(a) through 8(g)*, including but not limited to, any financing contingency, shall be deemed waived by Buyer.

    **8.4 Response by Seller.** If Buyer provides written objections to Seller, Buyer and Seller shall have <u>7</u> **CALENDAR DAYS** after Seller's receipt of Buyer's objections (the "Response Period") in which to agree in writing upon the manner of resolving Buyer's objections. Except as provided in *Section 10*, Seller may, but shall not be required to, resolve Buyer's objections. If Buyer and Seller have not agreed in writing upon the manner of resolving Buyer's objections, Buyer may cancel this Contract by providing written notice to Seller no later than **THREE CALENDAR DAYS** after expiration of the *Response Period*; whereupon the *Earnest Money Deposit* shall be released to Buyer. If this Contract is not canceled by Buyer under this *Section 8.4*, Buyer's objections shall be deemed waived by Buyer. This waiver shall not affect those items warranted in *Section 10*.

**9. ADDITIONAL TERMS.** There [X] ARE [ ] ARE NOT addenda to this Contract containing additional terms. If there are, the terms of the following addenda are incorporated into this Contract by this reference: **[X] Addendum No. <u>1</u>**
[ ] Seller Financing Addendum   [ ] Assumption Addendum   [ ] Lead-Based Paint Disclosure & Acknowledgement
[ ] Other (specify): _____

**10. SELLER'S WARRANTIES & REPRESENTATIONS.**
    **10.1 Condition of Title.** Buyer agrees to accept title to the *Property* subject to the contents of the *Commitment for Title Insurance* as agreed to by Buyer under *Section 8*. Buyer also agrees to take the *Property* subject to existing leases affecting the *Property* and not expiring prior to Closing. Buyer agrees to be responsible for taxes, assessments, association fees and dues, utilities, and other services provided to the *Property* after Closing. Except for any loan(s) specifically assumed by Buyer under *Section 2*, Seller will cause to be paid off by Closing all mortgages, trust deeds, judgments, mechanic's liens, tax liens and warrants. Seller will cause all assessments to be paid current by Closing.

    **10.2 Condition of Property.** Seller warrants that **ON THE DATE SELLER DELIVERS PHYSICAL POSSESSION TO BUYER**, the *Property* and improvements will be broom-clean and free of debris and personal belongings, and in the same general condition as they were on the date of *Acceptance*.

    **10.3 Other Seller Warranties.** Seller further warrants that, to the best of Seller's knowledge, each of the following statements is true: (a) the consummation of the transactions contemplated by this Contract will not constitute a default or result in the breach of any term or provision of any contract or agreement to which Seller is a party so as to adversely affect the consummation of such transactions; (b) there is no action, suit, legal proceeding or other proceeding pending or threatened against Seller and/or the *Property* which may adversely affect the transactions contemplated by this Contract, in any court or before any arbitrator of any kind or before or by any governmental body which may adversely affect the transactions contemplated by this Contract; (c) all work which will be performed in, on or about the *Property* or materials furnished thereto which might in any circumstances give rise to a mechanic's or materialman's lien, will be paid and all necessary waivers of rights to a mechanic's or materialman's lien for such work will be obtained; (d) Seller has not received any written notice indicating that the *Property* is in violation of any Federal, State or local Environmental Law; (e) there are no Hazardous Substances on, under, or about the *Property*, nor has Seller undertaken, permitted, authorized or suffered, and will not undertake, permit, authorize or suffer the presence, use, manufacture, handling, generation, storage, treatment, discharge, release, burial or disposal on, under or about the *Property*

Page 3 of 6      Buyer's Initials ____ Date 12-14-14   Seller's Initials ____ Date 12/14/14

of any Hazadous Substances, or the transportation to or from the *Property*, of any Hazardous Substances. As used herein, "Hazardous Substance" shall mean any substance, material or matter that may give rise to liability under any Federal, State, or local Environmental Laws; and (f) Seller is not a "foreign person" as that term is defined in Section 1445 of the U.S. Internal Revenue Code of 1986, as amended. (In that regard, Seller shall deposit into Escrow, at or prior to Closing, an affidavit in such form as may be required by the U.S. Internal Revenue Service, setting forth Seller's full name, address and taxpayer identification number and stating under penalty of perjury that Seller is not a "foreign person" as so defined).

**11. FINAL PRE-CLOSING INSPECTION.** Before Settlement, Buyer may, upon reasonable notice and at a reasonable time, conduct a final pre-closing inspection of the *Property* to determine **only** that the *Property* is "as represented," meaning that the items referenced in *Sections 1.1, 8.4 and 10.2 and 10.3* ("the items") are respectively present, repaired/changed as agreed, and in the warranted condition. If the items are not as represented, Seller will, prior to Settlement, replace, correct or repair the items or, with the consent of Buyer (and Lender if applicable), escrow an amount at Settlement to provide for the same. The failure to conduct a final pre-closing inspection or to claim that an item is not as represented, shall not constitute a waiver by Buyer of the right to receive, on the date of possession, the items as represented.

**12. CHANGES DURING TRANSACTION.** Seller agrees that from the date of Acceptance until the date of Closing, Seller shall not, without the prior written consent of Buyer: (a) make any changes in any existing leases; (b) enter into any new leases; (c) make any substantial alterations or improvements to the *Property*; or (d) incur any further financial encumbrances against the *Property*.

**13. AUTHORITY OF SIGNERS.** If Buyer or Seller is a corporation, partnership, trust, estate, limited liability company or other entity, the person executing this Contract on its behalf warrants his or her authority to do so and to bind Buyer and Seller. Seller further warrants that the execution and delivery of this Contract by Seller have been duly and validly authorized, and all requisite action has been taken to make this Contract binding upon Seller.

**14. COMPLETE CONTRACT/ASSIGNMENT.** This Contract together with its addenda, any attached exhibits, and Seller Disclosures, constitutes the entire Contract between the parties and supersedes and replaces any and all prior negotiations, representations, warranties, understandings or contracts between the parties. This Contract cannot be changed except by written agreement of the parties. This Contract **[X] SHALL [ ] SHALL NOT** be assignable by Buyer. Except as so restricted, this Contract shall inure to the benefit of and be binding upon the heirs, personal representatives, successors and assigns of the parties.

**15. MEDIATION.** Any dispute relating to this Contract that arise prior to or after Closing:
[ ] SHALL
[X] MAY AT THE OPTION OF THE PARTIES
first be submitted to mediation. Mediation is a process in which the parties meet with an impartial person who helps to resolve the dispute informally and confidentially. Mediators cannot impose binding decisions. The parties to the dispute must agree before any settlement is binding. The parties will jointly appoint an acceptable mediator and will share equally in the cost of such mediation. The mediation, unless otherwise agreed, shall terminate in the event the entire dispute is not resolved **THIRTY (30) CALENDAR DAYS** from the date written notice requesting mediation is sent by one party to the other(s). If mediation fails, the other procedures and remedies available under this Contract shall apply. Nothing in this *Section 15* shall prohibit any party from seeking emergency equitable relief pending mediation.

**16. DEFAULT.** If Buyer defaults, Seller may elect either to retain the Earnest Money Deposit as liquidated damages, or to return it and sue Buyer to specifically enforce this Contract or pursue other remedies available at law. If Seller defaults, in addition to return of the Earnest Money Deposit, Buyer may elect either to accept from Seller a sum equal to the Earnest Money Deposit as liquidated damages, or may sue Seller to specifically enforce this Contract or pursue other remedies available at law.

**17. ATTORNEY FEES AND COSTS.** In the event of litigation or binding arbitration to enforce this Contract, the prevailing party shall be entitled to costs and reasonable attorney fees. However, attorney fees shall not be awarded for participation in mediation under *Section 15*.

**18. NOTICES.** Except as provided in *Section 23*, all notices required under this Contract must be: (a) in writing; (b) signed by the party giving notice; and (c) received by the other party or the other party's agent no later than the applicable date referenced in this Contract.

**19. ABROGATION.** Except for the provisions of *Sections 8.4, 10.1, 10.3, 15 and 17* and any other express warranties made in this Contract, the provisions of this Contract shall not apply after Closing.

**20. RISK OF LOSS.** All risk of loss to the *Property*, including physical damage or destruction to the *Property* or its improvements due to any cause except ordinary wear and tear and loss caused by a taking in eminent domain, shall be borne by Seller until Closing.

**21. TIME IS OF THE ESSENCE.** Time is of the essence regarding the dates set forth in this Contract. Extensions must be agreed to in writing by all parties. Unless otherwise explicitly stated in this Contract: (a) performance under each Section of this Contract which references a date shall absolutely be required by 5:00 PM Mountain Time on the stated date; and (b) the term "days" shall mean calendar days and shall be counted beginning on the day following the event which triggers the timing requirement (i.e., Acceptance, etc.). If the performance date falls on a Saturday, Sunday, State or Federal legal holiday, performance shall be required on the next business day. Performance dates and times referenced herein shall not be binding upon title companies, lenders, appraisers and others not parties to this Contract, except as otherwise agreed to in writing by such non-party.

**22. FAX TRANSMISSION AND COUNTERPARTS.** Facsimile (fax) transmission of a signed copy of this Contract, any addenda and counteroffers, and the retransmission of any signed fax shall be the same as delivery of an original. This Contract and any addenda and counteroffers may be executed in counterparts.

**23. ACCEPTANCE.** "Acceptance" occurs when Seller or Buyer, responding to an offer or counteroffer of the other: (a) signs the offer or counteroffer where noted to indicate acceptance; and (b) communicates to the other party or to the other party's agent that the offer or counteroffer has been signed as required.

**24. CONTRACT DEADLINES.** Buyer and Seller agree that the following deadlines shall apply to this Contract:

| | | |
|---|---|---|
| (a) Seller Disclosure Deadline | 12/14/2014 | (Date) |
| (b) Due Diligence Deadline | 01/30/2015 | (Date) |
| (c) Settlement Deadline | 01/30/2015 | (Date) |

Page 5 of 6    Buyer's Initials _____ Date 12-14-14   Seller's Initials _____ Date 12/14/14

**25. OFFER AND TIME FOR ACCEPTANCE.** Buyer offers to purchase the *Property* on the above terms and conditions. If Seller does not accept this offer by: 3 : 00 [ ] AM [X] PM Mountain Time on 01/30/2015_____ (Date), this offer shall lapse; and the Brokerage or Title/Escrow Company shall return the *Earnest Money Deposit* to Buyer.

___*(signed)*___  ___  12/14/14  _____
(Buyer's Signature)  (Title, if any)  (Date)  (Buyer's Signature)  (Title, if any)  (Date)

JAKE ABBOTT _____  4430 N. 400 W.  84414  (801)710-4650  _____
(Buyers' Names) **(PLEASE PRINT)**  (Address)  (Zip Code)  (Phone)  (Fax)

_____
(Buyers' Names) **(PLEASE PRINT)**  (Address)  (Zip Code)  (Phone)  (Fax)

### ACCEPTANCE/COUNTEROFFER/REJECTION

**CHECK ONE:**

[X] **ACCEPTANCE OF OFFER TO PURCHASE:** Seller Accepts the foregoing offer on the terms and conditions specified above.

[ ] **COUNTEROFFER:** Seller presents for Buyer's Acceptance the terms of Buyer's offer subject to the exceptions or modifications as specified in the attached ADDENDUM NO. _____

___*(signed)*___  12/14/14  _____
(Seller's Signature)  (Date)  (Time)  (Seller's Signature)  (Date)  (Time)

DENTON DUNN  P.O. Box 27837  SLC, Utah  84127  940-682-7773  801-278-6464
(Sellers' Names) **(PLEASE PRINT)**  (Address)  (Zip Code)  (Phone)  (Fax)

_____
(Sellers' Names) **(PLEASE PRINT)**  (Address)  (Zip Code)  (Phone)  (Fax)

[ ] **REJECTION:** Seller Rejects the foregoing offer.

_____
(Seller's Signature)  (Date)  (Time)  (Seller's Signature)  (Date)  (Time)

*****************************************************
### DOCUMENT RECEIPT

State law requires Broker to furnish Buyer and Seller with copies of this Contract bearing all signatures. (Fill in applicable section below.)

A. I acknowledge receipt of a final copy of the foregoing Contract bearing all signatures:

X ___*(signed)*___  12-14-14  _____
(Buyer's Signature)  (Date)  (Buyer's Signature)  (Date)

X ___*(signed)*___  12-14-14  _____
(Seller's Signature)  (Date)  (Seller's Signature)  (Date)

B. I personally caused a final copy of the foregoing Contract bearing all signatures to be [ ] **faxed** [ ] **mailed** [X] **hand delivered** on _____, postage prepaid, to the [ ] **Seller** [ ] **Buyer.**
Sent/Delivered by (specify) _____

This form is COPYRIGHTED by the UTAH ASSOCIATION OF REALTORS® for use solely by its members. Any unauthorized use, modification, copying or distribution without written consent is prohibited. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION. IF YOU DESIRE SPECIFIC LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

COPYRIGHT© UTAH ASSOCIATION OF REALTORS® -- 1994 -- REVISED 10.13.04 -- ALL RIGHTS RESERVED                    UAR FORM 3

Page 6 of 6                Buyer's Initials ____ Date 12-14-14  Seller's Initials ____ Date 12/14/14




ADDENDUM NO. 1
TO
REAL ESTATE PURCHASE CONTRACT

THIS IS AN [X] ADDENDUM [ ] COUNTEROFFER to that REAL ESTATE PURCHASE CONTRACT (the "REPC") with an Offer Reference Date of <u>14th day of December, 2014</u> including all prior addenda and counteroffers, between <u>Jake Abbott or Assigned</u> as Buyer, and <u>DO1 Inc</u> as Seller, regarding the Property located at <u>1881 California Av SLC, Ut 84106</u>. The following terms are hereby incorporated as part of the REPC:

<u>1. Total sales price to be paid by buyer to seller is 1,200,000.00 . The break down for closing schedule and payout documents will have two parts, as follows.  D&D Truckstop, the landowner and the lessor of the property shall receive $134,741.43 which will bring lease current as of the closing date. Balance of monies to be paid out will be agreed upon by the direction of the Federal Court. 2. Approval of land owner to extend lease to thirty (30) years with right of first refusal.3.Jake Abbott, buyer, will have a first right of refusal to purchase the property during the duration and full term of the lease. However, the property may be transfer to a son or daughter of Mr. and Mrs Dean Shelledy. (inter-family transfer), but to no other person. All existing leases and agreements to stay in place with simple Assignment and Assumption documents to be executed by the parties, and approved by any other party holding a secured interest in and to the lease agreement. 4. Buyer has the option of staying with 7 -11 or leaving with no cost to buyer. 5. Option to operate after court approval, if the parties and court do not object. 6. The parties acknowledge and agree that land owner retains an easement for ingress and egress to its property holdings, which easement existed with the prior tenant, DO1 Inc. 7. Earnest Money to be funded when court approves sale to buyer.8. When and if buyer decides to operate before closing, buyer will pay one cent per gallon to DO1 9. Buyer to receive all leasehold assects free and clear or seller pays for buyer bond for the amount of bankruptcy</u>

BUYER AND SELLER AGREE THAT THE CONTRACT DEADLINES REFERENCED IN SECTION 24 OF THE REPC (CHECK APPLICABLE BOX): [X] REMAIN UNCHANGED [ ] ARE CHANGED AS FOLLOWS: _____

To the extent the terms of this ADDENDUM modify or conflict with any provisions of the REPC, including all prior addenda and counteroffers, these terms shall control. All other terms of the REPC, including all prior addenda and counteroffers, not modified by this ADDENDUM shall remain the same. [X] Seller [ ] Buyer shall have until <u>3</u> : <u>00</u> [ ] AM [X] PM Mountain Time on <u>January 30, 2015</u> (Date), to accept the terms of this ADDENDUM in accordance with the provisions of Section 23 of the REPC. Unless so accepted, the offer as set forth in this ADDENDUM shall lapse.

X _____   12-15-14  11:11AM   _____
[X] Buyer [ ] Seller Signature   (Date)   (Time)   [ ] Buyer [ ] Seller Signature   (Date)   (Time)

ACCEPTANCE/COUNTEROFFER/REJECTION

CHECK ONE:
[X] ACCEPTANCE: [X] Seller [ ] Buyer hereby accepts the terms of this ADDENDUM.
[ ] COUNTEROFFER: [ ] Seller [ ] Buyer presents as a counteroffer the terms of attached ADDENDUM NO. _____

_____  12/17/14 @ 9:17AM   _____
(Signature)   (Date)   (Time)   (Signature)   (Date)   (Time)

[ ] REJECTION [X] Seller [ ] Buyer rejects the foregoing ADDENDUM.
X _____
(Signature)   (Date)   (Time)   (Signature)   (Date)   (Time)

THIS FORM APPROVED BY THE UTAH REAL ESTATE COMMISSION AND THE OFFICE OF THE UTAH ATTORNEY GENERAL, EFFECTIVE AUGUST 5, 2003. IT REPLACES AND SUPERSEDES ALL PREVIOUSLY APPROVED VERSIONS OF THIS FORM.

Page 1 of 1    Buyer's Initials _____ Seller's Initials _____    Addendum No. 1 to REPC

ACCEPTANCE/COUNTEROFFER/REJECTION

**CHECK ONE:**
[X] **ACCEPTANCE:** [X] **Seller** [ ] **Buyer** hereby accepts the terms of this ADDENDUM.
[ ] **COUNTEROFFER:** [ ] **Seller** [ ] **Buyer** presents as a counteroffer the terms of attached ADDENDUM NO. _____

_Eaton Run_____ 12/14/14____ 9:45AM__ /MTN Time_____
(Signature)           (Date)        (Time)        (Signature)                        (Date)        (Time)

[ ] **REJECTION:** [ ] **Seller** [ ] **Buyer** rejects the foregoing ADDENDUM.

_____
(Signature)           (Date)        (Time)        (Signature)                        (Date)        (Time)

**THIS FORM APPROVED BY THE UTAH REAL ESTATE COMMISSION AND THE OFFICE OF THE UTAH ATTORNEY GENERAL, EFFECTIVE AUGUST 5, 2003. IT REPLACES AND SUPERSEDES ALL PREVIOUSLY APPROVED VERSIONS OF THIS FORM.**

Page 2 of 2    Buyer's Initials _____ Seller's Initials _____    Addendum No. 1 to REPC

REALTOR®

**REAL ESTATE PURCHASE CONTRACT**

EQUAL HOUSING OPPORTUNITY

THIS IS AN [X] ADDENDUM [ ] COUNTEROFFER to that REAL ESTATE PURCHASE CONTRACT (the "REPC") with an Offer Reference Date of <u>14th day of December, 2014</u> including all prior addenda and counteroffers, between <u>Jake Abbott or Assigned</u> as Buyer, and <u>DO1 Inc</u> as Seller, regarding the Property located at <u>1881 California Av SLC UT 84106</u>. The following terms are hereby incorporated as part of the REPC:

<u>"Jake Abbott, buyer, will have a first right of refusal to purchase during the duration and full term of the 30 year lease. The first right of refusal shall not apply, however, if the property is transferred to the children or grandchildren, natural or adopted, of Mr. and Mrs Dean Shelledy." If a transfer to a child or grandchild occurs during the term of the 30 year lease it shall not effect the first right of refusal to purchase and that right shall remain in full force and effect.</u>

BUYER AND SELLER AGREE THAT THE CONTRACT DEADLINES REFERENCED IN SECTION 24 OF THE REPC (CHECK APPLICABLE BOX): [X] REMAIN UNCHANGED [ ] ARE CHANGED AS FOLLOWS: _____

To the extent the terms of this ADDENDUM modify or conflict with any provisions of the REPC, including all prior addenda and counteroffers, these terms shall control. All other terms of the REPC, including all prior addenda and counteroffers, not modified by this ADDENDUM shall remain the same. [X] Seller [ ] Buyer shall have until <u>3</u> : <u>00</u> [ ] AM [X] PM Mountain Time on <u>January 30, 2015</u> (Date), to accept the terms of this ADDENDUM in accordance with the provisions of Section 23 of the REPC. Unless so accepted, the offer as set forth in this ADDENDUM shall lapse.

_[signature]_  1/9/2014  11:00PM
[X] Buyer [ ] Seller Signature    (Date)   (Time)    [ ] Buyer [ ] Seller Signature    (Date)   (Time)

**ACCEPTANCE/COUNTEROFFER/REJECTION**

CHECK ONE:
[ ] ACCEPTANCE: [ ] Seller [ ] Buyer hereby accepts the terms of this ADDENDUM.
[ ] COUNTEROFFER: [ ] Seller [ ] Buyer presents as a counteroffer the terms of attached ADDENDUM NO. _____

(Signature)    (Date)   (Time)    (Signature)    (Date)   (Time)

[ ] REJECTION: [ ] Seller [ ] Buyer rejects the foregoing ADDENDUM.

(Signature)    (Date)   (Time)    (Signature)    (Date)   (Time)

THIS FORM APPROVED BY THE UTAH REAL ESTATE COMMISSION AND THE OFFICE OF THE UTAH ATTORNEY GENERAL, EFFECTIVE AUGUST 5, 2003. IT REPLACES AND SUPERSEDES ALL PREVIOUSLY APPROVED VERSIONS OF THIS FORM.